## Martin, et al. v. Adams, et al.

(Decided September 28, 1916.)

## Appeal from Grant Circuit Court.

1. Deeds—Repugnancy—When Granting Clause Will Prevail.—If there is a clear repugnance between the granting clause and the habendum clause in a deed, and there is nothing in the instrument from which the intention of the parties may be obtained, the granting clause will prevail, and the estate conveyed therein will be upheld over that which is described in the habendum clause. But this does not prevail where a different intention is shown by the entire deed, for it is the modern rule that the entire instrument may be looked at to obtain the intention of the grantor, and if from an inspection of the entire instrument the estate granted in the granting clause is reduced or qualified in any way, such interpretation will be given the instrument.

2. Deeds—Conditional Fee—Forfeiture.—On April 5, 1901, the grantor conveyed to his daughter and her three infant children jointly a piece of land, the consideration for which, as expressed in the deed, was that the daughter and her husband should take care of and provide for her father during his lifetime. Twelve days thereafter, and on April 17, 1901, the daughter concluded to surrender the undertaking and rescind the contract by herself and husband reconveying the property to her father, the consideration of which latter deed is expressed to be a release of the grantees in the first deed from the performance of the contract therein specified. Nothing was ever done by the daughter or her children who were her joint grantees, in furtherance of the fulfillment of contract, but on the contrary after the deed of April 17, 1901, the father remained in possession of the property, and afterwards sold it for valuable consideration. It was expressly stated in the first deed that if the consideration therein expressed was not complied with, the title to the land should become forfeited, and it was further provided that the fee should not pass until the death of the grantor. Held, that although in the granting clause of the first deed an absolute estate was conveyed, from an inspection of the entire deed only a conditional fee was granted, to become forfeited if the consideration was not performed by the grantees, and that this non-performance worked a forfeiture of title to the grantor, who, being in possession, conveyed to a subsequent grantee a perfect title, and that the infant grantees have no interest in the land, and the deed of April 5, 1901, should be cancelled in this suit brought by the present owner against such infant grantees to remove the cloud upon his title.

JOHN T. MURPHY and MARTIN J. BROWN for appellants.

C. C. ADAMS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 5, 1901, Robert Kleinsmith, Sr., conveyed a tract of land located in Grant county, and containing about seventy acres, to the appellants, Bessie Williams Martin, Lillie Williams Ring, Raymond Williams and their mother, Josephine Williams, which was duly acknowledged and recorded in the county clerk's office for Grant county. This deed was made jointly to the grantees mentioned, Josephine Williams being the daughter of the grantor. The grantees, who are the appellees in this case, are the children of Josephine Williams, and they were eight, six and four years of age, respectively, at the time of the making of the deed. The grantor, Robert Kleinsmith, Sr., was of advanced age, and an invalid, and the sole consideration for the execution of the deed was the agreement and promise by his daughter, Josephine Williams, and her husband, to take care of, provide for and support him, including laundry, personal care and attention, medicine and medical bills, and all the duties which his condition would require during his natural life.

After the description of the land in the deed, and just preceding the habendum clause, it contains this language: "Whereas, the party of the first part is of advanced years and is an invalid and the said Robert Kleinsmith makes this contract, sale and conveyance with the direct understanding that he will demand and require all things and provisions and stipulations herein fully carried out by his said daughter and son-in-law, and the said daughter and son-in-law hereby agree to comply promptly, fully and strictly with said contract, and fully carry out same at all times as long as the party of the first part lives, and on failure to comply fully the party of the second part will surrender up said premises. The title is not to vest in the said party of the second part until the death of the party of the first part, and all the rights, title and estate of the first party therein, including all right of dower and homestead."

Following the habendum clause, it is stipulated: "A lien is retained upon the property hereby conveyed as security for the payment of the said unpaid purchase money, and to secure the full performance of the contract and stipulations mentioned herein this lien is retained. But it is especially provided herein that if the

said party of the second part shall at any time fail to perform either or any of the stipulations or requirements as hereinbefore set out, viz.: To provide a support, personal care and attention and to ( ) all things required and set out herein, and that on failure to comply with the stipulations in this deed and conveyance it is to be null and void, and the party of the second part is to at once surrender posesssion on failure to comply with the provisions herein.''

Mrs. Williams and her husband, with their three children, the appellants herein, immediately moved upon the premises and undertook the obligations imposed by the deed; but within a few days dissatisfaction arose, and by mutual agreement between Robert Kleinsmith, Sr., and Mrs. Williams and husband, all agreements imposed by the deed were attempted to be rescinded. This was endeavored to be effected by a deed of conveyance of the same land from Mrs. Williams and husband to the grantor in the deed of April 5, 1901, which latter deed was executed on the 17th of April in that same year. Of course, none of the infant appellants herein attempted in any manner to join in the last deed mentioned. The consideration expressed in that deed is: ''That the party of the second part hereby release the party of the first part from the agreement to provide board, lodging, washing, ironing, medical attention, medicines, personal care and attention, and to fully release parties of the first part from their contract and agreement as stated and set forth in a deed of conveyance from the said Robert Kleinsmith, Sr., to the said parties of the first part, of date 5th day of April, 1901, recorded in Deed Book No. 15, page 279, Grant County Records.''

After the habendum clause in that deed, in order, as it seems, to leave no doubt as to the intention of the parties, it is inserted: ''This deed is made to convey back to the said Robert Kleinsmith, Sr., all the land described in the said deed of April 5, 1901, and to cancel and annul the agreement between the said parties, as stated and set out in said deed, because the said Josephine Williams and her husband, James Williams, are wholly unable to provide a support and render a personal care and attention to the said Robert Kleinsmith, and can not and will not carry out their said contract and understanding as set forth in said deed of date April 5, 1901.''

After the execution of the last deed Mrs. Williams and her husband moved away from the premises, carrying with them, of course, the appellants herein, who were at that time mere infants, but the father of Mrs. Williams continued to remain upon the premises, and in the course of two years thereafter conveyed the land to other parties. There were mesne conveyances, which are not necessary to mention, but finally the appellee, Robert Adams, became the owner of the land, and, discovering the deed of April 5, 1901, he filed this suit against the appellants, asking for a. cancellation of the deed of April 5, 1901, to them, and to have it adjudged that neither of them had any interest in the land, and to remove from his title the apparent cloud which that deed cast upon it. A demurrer was filed to the petition, which was overruled, and an answer filed which contained nothing more than a recitation of the two deeds herein mentioned, and a demurrer having been filed to it was sustained, and judgment rendered granting the relief sought in the petition, and from that judgment this appeal is prosecuted.

It is the contention of appellants that under the deed of April 5, 1901, the granting clause therein conveyed to them a joint interest with their mother, they taking a one-fourth undivided interest in and to the land conveyed, and that the other stipulations found in different parts of the deed can not be permitted to have the effect of impairing the absolute title which they insist was conveyed to them by that deed, and also that the execution of the deed of release of date of April 17, 1901, did not have the effect of depriving them of any title which they obtained by the first deed. In substantiation of this contention we are referred to quite a number of authorities to the effect that if there is a clear repugnance between the granting clause in a deed of conveyance of real property and the habendum clause, that the former shall prevail, and the grantee take the estate therein given. In the outset it may be conceded that this is and has been for a long time, the general rule, but it has always been confined to cases where the repugnance was not only clear and manifest, but also where there was nothing else in the deed from which the settled intention of the grantor could be discovered. Whatever the rule may have been in the early days of English tenures, when it was considered that contracts concerning real property were subject to different rules

of interpretations from other contracts, the rule now is, that they should be construed as other contracts are construed, and that the rule governing the construction of contracts to the effect that the intention of the parties as gathered from the entire instrument shall prevail, applies in modern times to contracts concerning real estate the same as to other contracts. Devlin on Real Estate, third edition, volume 1, section 215a; Coomes v. Frey, 141 Ky. 740; Dinger v. Lucken, et al., 143 Ky. 850; Ray v. Spears' Executor and Others, 23 Ky. Law Rep. 814; Virginia Iron, Coal and Coke Co. v. Dye and Others, 146 Ky. 519; Taylor and Others v. Dedman, 166 Ky. 368; Hamilton and Others v. Sidwell and Others, 131 Ky. 423. Many other authorities from this court, as well as others, might be cited, if necessary.

Without quoting from all the cases it will suffice to say that in the Virginia Iron, Coal and Coke Company case, *supra,* the question was very thoroughly considered, and in the opinion, quoting from others from this court, it is stated *inter alia*: "In construing a deed this court is committed to the doctrine that the intention of the parties, as appears from the whole deed, must control. If the intention appears, technical rules of construction cannot be applied if they lead to a different result. If the granting clause and the habendum are irreconcilable, and the other parts of the deed *do not make it apparent* which the grantor intended should control, the granting clause will prevail. Hall v. Wright, 121 Ky. 16." Further along in the opinion, and quoting from Tanner v. Ellis, 127 S. W. 996, it is said: "The object of all rules of construction is to arrive at the intention of the parties; and, when upon a consideration of the whole instrument, the intention of the parties in the light of their surrounding circumstances sufficiently appears, it will be carried out. The court must look to the whole instrument to ascertain the intention of the parties, rather than to a particular word, for it is well known that persons frequently use words in their popular sense rather than in their strict legal meaning; and, if there is enough in the paper to show what the parties in fact meant, their actual intention will be enforced."

In asserting the rule as stated this court in the Runyon case said: "In construing a deed it will be read as a whole, and if upon consideration of the whole instru-

ment, it appears that it was the intention of the party to vest a less estate than a fee in the grantee, that intention will be carried into effect.

In the still later case of Taylor v. Dedman, *supra,* this court, in considering the rule under consideration, said: "In construing deeds it was formerly held that in case of clear repugnance between the nature of the estate granted and that limited in the habendum, the latter yields to the former. Ratliffe, etc. v. Marrs, etc., 87 Ky. 26. But in the more recent decisions of this court the tendency has been to relax the strictness of the technical rule of construction above announced, and to construe a deed according to the intention of the grantor as gathered from the whole instrument. Thus in Dinger v. Lucken, et al., 143 Ky. 850, the court said: 'The rule is that where by a deed a fee is granted, and the deed as a whole shows an intention to vest the grantee with a fee, an attempted limitation upon the fee will be disregarded. But in all cases the effect of the deed turns on its proper construction when read as a whole; and if upon the whole instrument, it appears that the grantor's intention was to vest a less estate than a fee in the grantee, that intention will be carried into effect; for deeds, like other instruments, must be construed according to the intention of the parties where that intention is sufficiently expressed in the instrument.'

"So it is held that technical words in the granting or habendum clause importing a fee, must yield to subsequent clauses limiting the interest of the grantee to a life estate. Atkins v. Baker, 112 Ky. 877; Lawson, etc. v. Todd, etc., 129 Ky. 133; Wilson v. Moore, 146 Ky. 679."

From these authorities, it is perfectly apparent, in the light of the emphatic and frequently repeated language which we find in the deed of April 5, 1901, that it was the intention of the grantor therein not to grant an absolute fee simple title to the grantees, freed from all encumbrances and irrevocable, but, on the contrary, it was his intention, as well as that of the adult parties who assumed the obligations imposed by it, that if there should be a failure to perform the conditions therein stipulated, the title attempted to be conveyed, and all interest in the land should become forfeited. This intention is forfeited by the actions of the parties when the deed of release of the 17th of April, 1901, was executed.

It would indeed be a most inequitable construction to say that the appellants have title to the land in controversy because of the deed upon which they rely, when no part of the consideration for that deed has ever been performed, and no technical rules should be applied which would produce such inequitable results. Our conclusion, then, is that whatever interest the appellants took in the land under the deed through which they claim, was subject to be and was defeated by failure to comply with the terms of that instrument, which terms formed the consideration moving from the grantees therein.

It is insisted, however, that in order to have deprived the appellants of any interest which they may have taken in the land, that some affirmative action against them was required on the part of the grantor, Robert Kleinsmith, Sr., and that, inasmuch as he failed to do this, they still retain the title which the deed in question conveyed to them. This same insistence was made in the case of Lowe, et al. v. Stepp, et al., 132 Ky. 75, and in denying it, this court in that opinion said: "It is, however, strongly contended by counsel for appellants that the remainder interest of the children of O. P. Lowe in the land could not be affected by the acts of Lawyer T. Lowe in the matter of the forfeiture, or those of their father in consenting to it. This contention is untenable under the facts of this case. The interest of the remaindermen was dependent upon the due fulfillment of the contract on the part of their father, O. P. Lowe, to maintain his parents, the grantors in the deed to him; and, if he failed to carry out that undertaking as stipulated in the deed, then the remainder interest was liable to be defeated, and did, in fact, cease upon the election of the grantor, Lawyer T. Lowe, to declare a forfeiture followed by the re-entry and subsequent possession. It will not be contended that the interest of the remaindermen was not subject to the lien retained in the deed to secure the faithful performance of the conditions it imposed upon the life tenant. If the failure of the latter to comply with the conditions could be made to operate as a forfeiture of title at the election of the grantor and a re-entry by him, such forfeiture would defeat the interest of the remaindermen as it would that of the owner of the life estate."

In the still later case of Brown v. Pullins, et al., 141 Ky. 774, this court had under consideration a question

very much analogous to the one we now have. The grantor therein had conveyed land to his nephew upon conditions very similar to those expressed in the deed here involved. The nephew performed his contract for only about three months, and then abandoned it, and moved away from the premises. A short while thereafter the grantor, who was in possession of the premises, made a similar conveyance, based upon the same consideration, to one Mrs. Clyde Pullins, who cared for and looked after the grantor and his wife, and otherwise performed the conditions of the deed to her, until their death. The nephew afterwards brought suit against Mrs. Pullins to recover from her the land, and damages for withholding it. She answered, setting up the facts as herein recited, and upon trial the petition was dismissed. The nephew prosecuted an appeal to this court, and it, in the opinion affirming the judgment of the court below, said: "And inasmuch as his contract provided that unless the services called for in the deed were fully and faithfully rendered, the contract should be null and void, and the deed necessarily inoperative, we are at a loss to understand upon what authority he rests his right to further compensation. The consideration for the conveyance was that he should care for his uncle and aunt in a proper and suitable manner during their lives, and bury them at their death. His right to the title to this land depended upon his faithfully carrying out this agreement."

If authority was needed to refute the contention made by appellants upon the point under consideration, we are convinced that the ones referred to successfully do this; but, without those authorities it would be a difficult matter for a court of equity to give its sanction to any rule which would vest any grantee with title to real estate when there had been a total failure to perform any part of the consideration, and when it was clear that the conveyance was not intended to be voluntary. If, however, the rule was otherwise, and the law should require some affirmative procedure in court to divest the appellants of whatever interest they obtained, then we have such a procedure in this case, and the question is now before us whether they shall be permitted to hold the land without the performance of the consideration. We unhesitatingly agree with the trial court that they can not be permitted to do so, and

they were properly adjudged to have no interest in the land in question.

There are some questions involved in regard to the right of the appellants to recover rent for use and occupation of the land by the appellee, Adams, and intervening owners, but the disposition which we have made of the case disposes of the necessity of considering these questions.

Wherefore, the judgment is affirmed.